## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRYAN WILLIAM E.,[1]        )
        )
       **Plaintiff,**        )
        )     **CIVIL ACTION**
**v.**        )
        )     **No. 22-1082-JWL**
**KILOLO KIJAKAZI,**        )
**Acting Commissioner of Social Security,**        )
        )
       **Defendant.**        )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on June 24, 2019. (R. 15, 236, 243).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating his allegations of symptoms, particularly his mood and panic symptoms.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff claims the ALJ did not adequately weigh Plaintiff's allegations of symptoms or adequately explain why he rejected them and his RFC did not account for all Plaintiff's psychological symptoms.  (Pl. Br. 7).  He argues, "to the extent the ALJ generally addressed [Plaintiff]'s mental impairments, he relied upon a mischaracterization of [Plaintiff]'s mental conditions to dismiss their limiting effects. Remand is required because the ALJ's determination regarding [Plaintiff]'s alleged limitations was not supported by the evidence, and as such, no reasonable mind would accept the ALJ's conclusion as supported by substantial evidence."  Id. (citing Kepler v. Chater, 68 F.3d 387, 388-89 (10th Cir. 1995)).

Plaintiff argues the ALJ "largely failed to directly address [Plaintiff]'s specific limitations." (Pl. Br. 8). He argues that although the ALJ summarized some of the medical evidence, he "failed to explain his finding that the record was inconsistent with [Plaintiff]'s specific allegations." Id. at 9 (citing without pinpoint citation, Jamie N. v. Saul, Civ. A. No. 20-1164-JWL, 2021 WL 2454427 (D. Kan. June 16, 2021)). Plaintiff acknowledges the ALJ's recognition of Plaintiff's consistent struggles with motivation, anxiety, and functioning in public and continued struggle with short-term periods of employment with only inconsistent improvement; but then argues the ALJ "mischaracterized the evidence and misconstrued the nature of [Plaintiff]'s impairments in support of his decision to dismiss [Plaintiff]'s testimony." Id. at 10. He argues this is illustrated by the fact the ALJ found Plaintiff's unsuccessful work attempts were all skilled or semiskilled jobs but failed to explain how he determined the work attempts failed because the jobs demanded greater mental abilities than assessed in the ALJ's RFC. Id. 11.

He argues the ALJ's misattribution of the reason for Plaintiff's unsuccessful work attempts tainted his evaluation of the medical opinion of his treatment provider, APRN Baird, because despite finding Plaintiff had experienced limitations multiple times in the abilities Ms. Baird found limited, the ALJ went on to discount the limitations she opined because the limitations appear to be "associated with work that exceeds the residual functional capacity [assessed by the ALJ]." Id. at 11-12 (quoting R. 23). Plaintiff argues there is an "incompatible contradiction" between the ALJ's rationale that Plaintiff's unsuccessful work attempts were semiskilled or skilled jobs exceeding his assessed

mental limitations while at the same time relying upon his finding Plaintiff "indicated less serious symptoms when employed." (Pl. Br. 12) (quoting R. 23). Plaintiff acknowledges he "reported at times that he had more energy or had a more positive outlook on life when he was employed, when watching his children, or going outside," id. at 12-13, but argues the evidence does not show increased functioning during those periods. Id. 13 (citing R. 591, 594). Plaintiff points to his testimony that it is hard for him to sustain "a high degree of functioning over periods of time," and argues the ALJ's view of his "symptoms as simply improving when he was employed, and worsening when he was unemployed, is a mistaken assessment." Id.

Plaintiff argues the ALJ erroneously relied upon his mental status examinations (MSEs) to discount his allegations because although the MSEs indicate he "could behave appropriately during individual visits, … they are not a good measure of [his] longitudinal functioning, nor do they address his ability to sustain such activity over time and in a competitive workplace." Id. at 14 (citing Casas v. Saul, No. 1:19-CV-01154-KRS, 2021 WL 107244, at *5 (D.N.M. Jan. 12, 2021) ("mental status examinations (MSE) document a clinician's observations of the patient at a particular point in time.")). He noted the ALJ's discussion of a treatment note in December 2018 wherein Plaintiff reported mood problems but his mental examination was essentially normal and the ALJ concluded that "despite his complaints, his level of functioning appears fairly normal." Id. (quoting R. 22). Plaintiff argues the ALJ's conclusion is belied by the longitudinal record including an intake evaluation at Comcare in November 2018, an emergency room

visit in January 2019, and a visit with a crisis therapist in February 2019.  (Pl. Br. 14)
(citing R. 387, 478, 481, 580).

Plaintiff alleges the ALJ summarily dismissed any limitation in interacting with
coworkers or supervisors because he found "nothing in [Plaintiff's] records suggests any
problem interacting with co-workers or supervisors" despite his testimony otherwise, Ms.
Baird's opinion otherwise, his diagnosis of bipolar disorder, and that he had been
terminated due to a conflict with the boss's daughter.  Id. 15-16.  He argues this evidence
suggests the ALJ failed to consider all the record evidence.

The Commissioner argues the ALJ properly discounted Plaintiff's allegations of
symptoms in accordance with 20 C.F.R. §§ 404.1529, 416.929 and Soc. Sec. Ruling
(SSR) 16-3p.  She argues the ALJ properly found the objective medical evidence,
Plaintiff's work activity, the inconsistencies between Plaintiff's allegation and the other
record evidence, and Plaintiff's improvement in functioning when working and being
more active all support discounting Plaintiff's allegations of disabling symptoms, and she
argues the record evidence supports the ALJ's findings.  (Comm'r Br. 11-15).

She also addresses Plaintiff's specific allegations of error.  She argues the ALJ
need not address each specific limitation alleged but must "link his evaluation of
Plaintiff's testimony to specific evidence in the record, which he did here."  Id. at 15. She
argues the ALJ's limitation to interactions with only coworkers and supervisors was
proper because even though Plaintiff was terminated due to a conflict with the boss's
daughter, there was no indication the boss's daughter was a coworker or supervisor, and
the ALJ properly discounted Plaintiff's testimony, including testimony he was limited in

the ability to accept criticism.  (Comm'r Br. 16-17).  The Commissioner argues it is reasonable for the ALJ to infer that although Plaintiff could not persist in his unsuccessful work attempts at semiskilled or skilled jobs he would be able to persist successfully at less stressful and less mentally challenging unskilled work.  Id. at 17-18.  She also argues it is proper for the ALJ to rely on Plaintiff's unremarkable mental status examinations because they were consistently unremarkable from February 2018 through July 2021, creating a longitudinal picture of his functioning.

In his Reply Brief Plaintiff argues the ALJ is required to address his individual symptoms because SSR 16-3p requires that the evaluation of symptoms "must 'contain specific reasons for the weight given to the individual's symptoms' and in a manner that is 'clearly articulated.'"  (Reply 3) (quoting SSR 16-3p, 2017 WL 5180304, at *10).  He argues, "the ALJ's failure to give 'specific reasons for the weight given to the individual's symptoms' requires remand."  Id. (quoting SSR 16-3p, 2017 WL 5180304, at *10).  He also argues, "Defendant's attempt to recast [Plaintiff]'s history of failed work attempts as evidence which supported the ALJ's conclusion should be rejected, as the ALJ himself did not interpret the evidence in this manner."  Id. at 4-5.  Plaintiff concludes his Reply,

> None of Defendants reasons offered in support of the ALJ's decision justified his failure to adequately evaluate [Plaintiff]'s subjective symptoms.  Indeed, Defendant conceded the ALJ failed to address [Plaintiff]'s specific symptoms but argued based upon outdated caselaw that "the ALJ was not obligated to discuss every single allegation…." (Def. Br. 15).  The ALJ's failure to give "specific reasons for the weight given to the individual's symptoms" in a manner that is "clearly articulated" violated SSR 16-3p.  2017 WL 5180304, at *10.

(Reply 7).

**A.**      **Standard for Evaluating a Claimant's Allegations of Symptoms**

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving a claimant's allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the

evidence, both objective and subjective, Claimant's pain is in fact
disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a

non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see

also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating a claimant's allegations of symptoms which overlap and expand

upon the factors stated by the court:  Daily activities; location, duration, frequency, and

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the
evaluation of a claimant's allegations of symptoms resulting from her impairments was
"credibility determination."  Although that term is no longer used, the applicable
regulation never used that term and the procedure for evaluating a claimant's allegations
of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation
of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.
§ 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination
was consistent with the approach set forth in SSR 16-3p.  Brownrigg v. Berryhill, 688
Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in
Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as
explained in the regulations in effect on August 18, 2021, when this case was decided.
Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility
that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an
examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is
no longer a valid factor to be considered.

intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures a claimant has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

### B.    The ALJ's Relevant Findings

The ALJ found that Plaintiff had three periods of work at a substantial gainful activity (SGA) level of income after his alleged onset of disability in July of 2018.  (R. 18).  He found, however, that these periods of SGA work qualified as unsuccessful work attempts (UWA) and noted the "jobs appear to be in excess of the residual functional capacity, below."  Id. at 19.  He found Plaintiff has mental impairments of bipolar disorder, depressive disorder, and anxiety disorder which are severe within the meaning of the Act and regulations.  (R. 19).  In determining Plaintiff's severe impairments do not meet or medically equal the criteria of Listings 12.04 and 12.06, he considered the

severity of Plaintiff's impairments in each of the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Id. at 20.  He found Plaintiff has a mild limitation in understanding, remembering, or applying information and a moderate limitation in each of the other three areas.  Id.

The ALJ found Plaintiff could work at all exertional levels but his Mental RFC is limited to "understand, remember, and apply instructions to perform simple repetitive tasks in jobs that do not require work on an assembly line, multitasking, tandem tasks, more than occasional changes in work setting, or more than occasional contact with the public."  Id. 21 (finding no. 5, bold omitted).  He stated he had evaluated Plaintiff's allegations of symptoms in accordance with 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p.  Id.  He found Plaintiff's allegations not consistent with the record evidence "for the reasons explained in this decision."  Id.

The ALJ summarized Plaintiff's treatment records, testimony, other record evidence and the opinion evidence, including Ms. Baird's medical opinion, the third-party opinions of Plaintiff's ex-wife, his friend, and his brother, and the opinions of the state agency psychological consultants, Dr. Sen and Dr. Kaspar.  Id. at 22-25.  The court quotes the ALJ's explanation of the significance of Plaintiff's mental limitations and his unsuccessful work attempts:

> Essentially, the claimant has consistently struggled with motivation, anxiety, and functioning in public throughout the period addressed in this decision.  Given these problems, he has continued to struggle with short-term periods of employment since the alleged onset date.  However, his work since the alleged onset date is all skilled or semi-skilled work as

reported, demanding greater mental abilities than actually assessed in this case.  In addition, a number of these jobs were public-facing jobs based on the claimant's descriptions of his employment.  This does suggest he needs to avoid such work, which appears to require functioning beyond his current abilities, but it does not necessarily suggest an inability to engage in less skilled work.

Moreover, at hearing and in his records, he has described primarily situational depression, which varies based on his current circumstance.  In addition, while he has required regular medication changes, the mental status findings, observations, and presentation have been relatively consistent throughout the record.  He has repeatedly indicated less serious symptoms when employed and when responsible for his children.  He has reported increased symptoms when unemployed, under financial stress, or when he was alone.  Thus, there is no reason to believe his condition would change for the worse if he was able to obtain less demanding employment that he was more capable of maintaining.

These factors do suggest that semi-skilled and skilled work exceeds his current abilities.  In addition, frequent work with the public also appears to exceed his current abilities.  By reducing the claimant's work demands to a level he is better able to manage, the record suggests he would be able to maintain employment without exacerbating his condition.

(R. 22-23).

## C.    __Analysis__

Plaintiff's primary argument is, "Remand is required because the ALJ failed to directly address the specifics of [Plaintiff]'s symptoms—including daily panic attacks, multiple weekly crying spells, and mood swings—in the manner required by SSR 16-3p." (Reply 1).  But in this argument Plaintiff is wrong.  As Plaintiff argues and repeatedly quotes in part, what SSR 16-3p requires is that the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's

symptoms." 2017 W 5180304, *10. That is precisely what the ALJ did in this case. He provided specific reasons for the weight given to Plaintiff's symptoms, those reasons are consistent with and supported by the evidence and are clearly articulated, allowing this court to assess his evaluation.

The court notes the SSR does not require the ALJ to provide specific reasons for the weight given to the individual symptoms but to the individual's symptoms—the symptoms of the individual. This is necessary to such an evaluation because the adjudicator or a subsequent reviewer cannot feel, observe, or otherwise directly sense the individual's symptoms. Therefore it is necessary, as required by SSR 16-3p, for the adjudicator to evaluate the consistency or inconsistency of all the alleged symptoms with the record evidence. A symptom is not an evidentiary fact which might be confirmed or denied by reference to direct evidentiary facts, so it is necessary to evaluate symptoms which cannot be substantiated by medical evidence by evaluating the consistency of the alleged intensity, persistence, or limiting effects with the totality of the record evidence. Thus, while there may not be evidence directly relating to each individual symptom alleged, when all the symptoms are considered in relation to their consistency with all the evidence an appropriate evaluation of the symptoms may be made. The greater the consistencies and lesser the inconsistencies overall, the greater the likelihood the allegations should be accepted, whereas the greater the inconsistencies and the lesser the consistencies, the lower the likelihood the allegations should be accepted.

Plaintiff's appeal to this court's decision in Jamie N. does not require a different result. In that case, the limitations alleged by the claimant were accepted by the ALJ but

14

neither the ALJ in the decision nor the Commissioner in her Brief explained how those limitations were "not so functionally limiting as to be disabling."  2021 WL 2454427, at *5.  Here, the ALJ recognized the <u>symptoms</u> alleged by Plaintiff and recognized they precluded his ability to perform the unsuccessful work attempts at semiskilled or skilled jobs.  However, he explained that he found the record showed the symptoms would be accommodated and would not preclude work in unskilled jobs within the <u>limitations</u> in the RFC he assessed.  Plaintiff has not met his burden to demonstrate otherwise.

The quotation from SSR 16-3p, 2017 WL 5180304, *10, cited above is from the last section of the SSR, "Adjudication—How we will use our evaluation of symptoms in our five-step sequential evaluation process to determine whether an individual is disabled."  <u>Id.</u>  The SSR continues to explain that at step two of the process the agency "will consider an individual's symptoms and functional limitations to determine whether his or her impairment(s) is severe unless the objective medical evidence alone establishes a severe medically determinable impairment or combination of impairments that meets our duration requirement."  <u>Id.</u> at *11.  The ALJ did so here, and found Plaintiff has severe impairments of bipolar disorder, depressive disorder, and anxiety disorder.  (R. 19).  The SSR explains that at step three the agency "will consider an individual's symptoms when a symptom(s) is one of the criteria in a listing to ensure the symptom is present in combination with the other criteria.  If the symptom is not one of the criteria in a listing, we will not evaluate an individual's symptoms at this step."  SSR 16-3p, 2017 WL 5180304, *11.  The ALJ considered Listings 12.04 and 12.06 and determined

Plaintiff's condition does not meet or medically equal the criteria of either Listing and Plaintiff does not argue otherwise.  (R. 19-21).

RFC is assessed between step three and step four of the sequential evaluation process and the Ruling requires the agency to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record."  2017 WL 5180304, *12.  The RFC assessed is used at both step four and step five of the process.  Id.  That is the process applied by the ALJ in this case.  There is no error with respect to applying the correct legal standard.

The court now considers Plaintiff's individual arguments of error.  Plaintiff acknowledged the ALJ recognized the significance of his mental limitations but argues he then "mischaracterized the evidence and misconstrued the nature of [Plaintiff]'s impairments in support of his decision to dismiss [Plaintiff]'s testimony."  (Pl. Br. 10). Plaintiff first argues the ALJ found his work attempts were unsuccessful because the jobs exceeded his functional capacity whereas the jobs were actually unsuccessful "for reasons that would preclude him from any type of employment, including unskilled work," arguing that the auto shop assistant job was terminated "due to a personality conflict with the owner's daughter" and the job at Lowe's "was terminated within a month due to [his] inability to maintain regular attendance."  Id. at 11 (citing R. 59, 591).

The ALJ's rationale is reasonable and is supported by the evidence relied upon. As the ALJ explained, all the jobs in Plaintiff's unsuccessful work attempts were semiskilled or skilled jobs requiring mental abilities beyond those in the RFC assessed.

16

Moreover, as the ALJ suggested, the lumber clerk, auto shop assistant, and receiving clerk jobs appear to be "public-facing jobs" requiring greater social interaction that in the RFC assessed.  (R. 23).  The two contrary examples suggested by Plaintiff do not compel a contrary finding.  First, the allegedly contrary examples are based solely upon the testimony of Plaintiff and are, therefore, flimsy support for an argument that the ALJ should have accorded greater credit to Plaintiff's allegations of symptoms.  Plaintiff's allegation he was let go from one job due to a personality conflict with the owner's daughter cites a treatment note from Ms. Baird in which the "History of Present Illness" section states, "He worked for 30 days and was let go due to personality conflict with owner's daughter."  (R. 591).  The only apparent source for the history at issue is Plaintiff's report, he does not cite to any other source, and the record does not contain an employer's statement providing that information.  Even assuming the report is correct, there is no suggestion in the evidence that the owner's daughter was a coworker, supervisor, or otherwise related to the job except as the owner's daughter.  Regarding Plaintiff's allegation he left Lowe's because he was unable to maintain regular attendance, it should be remembered that job is semiskilled with an SVP of three and exceeds the RFC of which he has been assessed capable, suggesting he may not have been able to attend because he was unable to perform adequately.  Further, Plaintiff's testimony in that respect indicates he may have just quit.  (R. 59).  The ALJ followed up on Plaintiff's testimony:

> ALJ:  So, at Lowe's you just stopped going into work?

CLMT:  Yeah, like, it's crazy.  I, the crazy thing about that is, like, the people there probably gave me more, like, positive feedback than any other job I've ever had.  Like, it wasn't a bad place, and, like, that still wasn't enough to, like, get me to go.  It's just crazy I mean, I still don't understand it.

(R. 59).

Plaintiff next objects to the ALJ's finding Plaintiff "has repeatedly indicated less serious symptoms when employed," id. at 23, arguing that is incompatibly contradictory with the finding his failed work attempts were because the work exceeded his RFC capabilities.  (Pl. Br. 12).  Plaintiff acknowledges he sometimes reported more energy or a more positive outlook when employed, watching his children, or going outdoors but argues those reports do not correlate with an increase in functioning because the same treatment record in which her reported better motivation and better sleep when working he reported he lost the job after 30 days and his motivation and sleep had started to worsen, and when he noted a better mood when getting out of the house he also noted a need for more medication for his anxiety over being out of the house.  Id. at 12-13 (citing R. 591, 594).

The court does not find an incompatible contradiction between the ALJ's findings. The ALJ found that Plaintiff failed his work attempts because the jobs worked were beyond his functional mental and psychological capabilities.  That finding is reasonable and supported by the record evidence.  He also found that Plaintiff's symptoms were less (his motivation and outlook were better) when he was working and looking after his children.  That finding is also supported by the record evidence.  It is therefore a reasonable inference from the facts in this case that if Plaintiff were to take a job within

his RFC limitations he would be able to perform the job and having the job would decrease his symptoms (increase his motivation and his outlook) thus allowing him to successfully continue working.  Plaintiff's citation of allegedly contrary evidence does not compel a different result.  Plaintiff's citation to R. 591 has been addressed above and deals with a job which is beyond his RFC limitations and his report of worsening motivation noted the worsening occurred after he left the job.  His suggestion that he may need more medication when going outdoors (or working) does not suggest that taking more medication will not or cannot adequately address the issue.

Plaintiff next argues the ALJ's reliance on mental status examination is erroneous because they are not a good measure of his longitudinal functioning.  As Plaintiff argues, an MSE measures a clinician's observation of Plaintiff's functioning at a point in time and the case he cites notes, "while it is entirely proper for an ALJ to consider MSE findings when evaluating the supportability of a medical opinion concerning a claimant's overall mental functioning and limitations, such findings are not necessarily dispositive to this analysis."  Casas, 2021 WL 107244, at *5.  While Casas concerned an ALJ weighing the medical opinion of a consultative examiner pursuant to the former treating physician rule and found "more serious substantive problems stem[ing] from the ALJ's characterization of the CE's MSE findings," id., the court would agree that consideration of MSE's is not dispositive even when evaluating a claimant's allegation of symptoms. However, the ALJ's evaluation of MSEs was not the only factor relied upon in his consideration of Plaintiff's allegation of symptoms.  Moreover, as the Commissioner

19

suggested in her Brief, the MSEs in this case were largely unremarkable throughout the period at issue suggesting longitudinal consideration.  (Comm'r Br. 12).

Plaintiff's appeal to the Comcare intake record in November 2018, an emergency room visit in January 2019, and a visit with a crisis therapist in February 2019 do not compel a different finding.  The ALJ found Plaintiff "described primarily situational depression, which varies based on his current circumstance."  (R. 23).  The crisis therapist visit to which Plaintiff appeals is recorded only in Ms. Baird's note of her first visit with Plaintiff on February 15, 2019, and is her recording of his report of his history.  (R. 580).  Moreover, Ms. Baird also recorded Plaintiff's social history that he was "Recently divorced."  Id., at 581.  The notes of Plaintiff's emergency room visit on January 16, 2019, reveal he awakened that morning with chest pain and anxiety and had recently run out of Klonopin, his anxiety medication.  Id. 387.  The record reveals he was given Klonipin, improved during the course of treatment, and was released with 15 Klonopin, 1 milligram pills.  Id. 390.  The November 14, 2018 Comcare intake notes reveal his report that "he and his wife divorced this summer," id. 480, do not reveal a mental status examination specifically but contain a page entitled "Mental Status Information" which contains some abnormal mental status reports and does not state whether the reports were based on Plaintiff's report or on a clinician's evaluation.  Id. 481.

Plaintiff cites these abnormal reports to suggest error in the ALJ's summary of a December 7, 2018 treatment visit with Dr. Grimsley, a Comcare psychiatrist, who reported Plaintiff's MSE:

> The patient appeared as: alert, cooperative and stated age.  The patient
> appeared clean and casually dressed.
> No psychomotor agitation, No psychomotor retardation.
> Speech rate, tone, volume, latency and articulation were within normal
> limits.  The speech rate was No pressure. [sic]
> Mood was "no motivation."
> Affect was neutral.
> Patient was oriented to person, place and time.
> Memory was intact. Attention and Concentration were Intact.
> Thought form was linear.  No flight of Ideas.
> Patient denies suicidal ideation, homicidal ideation, self-injurious thoughts,
> self-injurious behaviors, paranoid delusions, impulsivity and
> obsessions/compulsions.
> Patient denies auditory, visual and tactile hallucinations.
> Cognitive functions appeared to be at baseline.
> I/J [(insight/judgment)] appears adequate to continue out-pt treatment.

(R. 583).  The ALJ summarized Dr. Grimsley's evaluation:

> By December 2018, his mental status exam indicated he was alert and
> cooperative, with no psychomotor abnormalities (Exhibit 8F, p.12 [(R.
> 578)]).  In addition, his speech was normal, and his memory, attention, and
> concentration were all intact.  His though [sic] processes were also normal,
> and he denied suicidal ideation.  Although he reported mood problems, this
> consisted of a lack of motivation, and his affect was normal (Exhibit 8F,
> p.12 [(R. 578)]).  His cognitive functions also appeared to be intact (Exhibit
> 8F, p.12 [(R. 578)]).  Thus, despite his complaints, his level of functioning
> appears fairly normal.

(R. 23).

The problematic intake report a month before Dr. Grimsley's treatment note is

insufficient to overcome Dr. Grimsley's MSE and the ALJ's evaluation thereof especially

when viewed in light of the ALJ's finding of situational depression and Dr. Grimsley's

report that Plaintiff "States that the end of his marriage, and finances have been the

biggest stressors."  (R. 576).  The emergency room and crisis therapist visits after Dr.

Grimsley's treatment do not require a different result for the reasons discussed above.

Finally, Plaintiff's argument the ALJ erred in finding "nothing in [Plaintiff's] records suggests any problem interacting with co-workers or supervisors" (R. 23) is without merit.  Plaintiff argues error because he testified otherwise, he is diagnosed with bipolar disorder, and he was terminated from a job because of a conflict with the boss's daughter.  The ALJ made this finding when explaining his rationale for discounting Ms. Baird's finding moderate limitations in Plaintiff's abilities to interact with others.  (R. 23).  Clearly, Plaintiff's testimony at the hearing that he cannot accept criticism from supervisors was not in Ms. Baird's treatment records upon which she based her finding of moderate limitations.  While Plaintiff's diagnosis with bipolar disorder would have been available to Ms. Baird in Plaintiff's treatment records, the ALJ noted that Ms. Baird did not limit Plaintiff from public contact in her opinion and Plaintiff points to no authority, legal or medical, suggesting that the diagnosis of bipolar disorder suggests a limitation is required for interaction with supervisors and/or coworkers.  Finally, Plaintiff has shown no connection between his alleged conflict with the boss's daughter and interaction with supervisors or coworkers.  Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 27, 2023, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**